UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH LAUFER, Individually, | : |
| Plaintiff, | : |
| v. | : Case No. 1:20-cv-04594 |
| ESA P PORTFOLIO L.L.C. d/b/a EXTENDED STAY AMERICA - ROCKFORD, a Foreign Limited Liability Company, | : |
| Defendant. | : |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY**

In *Laufer v. Dove Hess Holdings, LLC*, 5:20-cv-379-BKS-ML, DE 33 (N.D. N.Y. 11/18/20), Judge Sannes issued an order regarding the sufficiency of pleadings and Plaintiff's standing. This order was then filed in multiple cases before that same Judge. A list of these cases can be found on the Docket at *Laufer v. Laxmi & Sons, LLC*, 1:19-cv-1505-BKS-ML, DE 20 (N.D.N.Y. 11/19/20). It should be noted that these decisions were limited to the sufficiency of the pleadings and as to whether proposed amendments to those pleadings would cure any argued deficiencies.

The *Dove Hess* Court ruled that Laufer's proposed amendment to the complaint which explained her system of rechecking online reservations systems ("ORS") of hotels she has sued would satisfy her "definite plan" to return requirement. Order, pp. 29-30, citing *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D.Fla. 2020). At p. 30, the Court held that the Plaintiff's allegation describing her proposed amendment describing her plans to travel to New York, her

1

family, her plans to travel extensively throughout the State and the fact that she intends to do so when the Covid crisis subsides would be satisfactory with respect to future injury.

The Court thereupon stated that the pleadings were deficient because these same reasons were not included in explaining why Plaintiff visited the ORS before the complaint was filed. Order, pp. 31-32. Based on this, the Court invited Plaintiff to file a letter brief requesting leave to amend her complaint, presumably to explain her reasons for visiting this and other New York hotel reservations systems in the first place (rather than solely explaining her basis for returning to the websites). *Id*., p. 37.

The *Dove Hess* Court's 38 page opinion extensively discussed the arguments on both sides. The Court's opinion can be summarized by its own statement, at p. 33, in which it recognized "the wide divergence among District Courts and overall lack of clarity regarding the law in this area, and the possibility that Plaintiff may be able to cure the standing issues the Court has identified through further amendment." The Court discussed most, but not all, of the applicable authorities and contains a considerable amount of analysis with which Plaintiff agrees, but ultimately misread the applicable law in deciding to impose a physical nexus/intent to book requirement as an element of injury.

1.  **Statements With Which Plaintiff Agrees**

    The *Dove Hess* Court made several observations with which Plaintiff agrees.

    First, with respect to Plaintiff's litigation history, the Court stated, at pp. 33-34:

    ""Courts must tread carefully before construing a Disability Act plaintiff's history of litigation against him," as "[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with" the ADA. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir.

2010) (alterations in original) (citations omitted). Nonetheless, some courts have relied in part on plaintiffs' serial litigation history in finding that they lacked a genuine intention to revisit a particular defendant's website or physical property; however, this is most common and appropriate at the summary judgment stage or trial, where a plaintiff can no longer rely on judicial deference to the allegations in her complaint, and the Court or factfinder may examine evidence beyond Plaintiff's complaint to evaluate whether she has a genuine intent to return.[Citations omitted.]....

The Court also held that, "Nothing in its analysis should be viewed as a criticism of testers with a genuine, laudable desire to seek out and remedy discrimination. The Court's role in this matter is not to cast positive or negative judgment on Plaintiff's motivations, but rather, is strictly limited to ensuring that, as a legal matter, Plaintiff satisfies Article III's standing requirements. ... 'None of this is to say that Laufer's goal was improper or that her concerns were invalid. Indeed, courts must be 'sensitive to the formidable challenges [disabilities] impose on the navigation of everyday life.'" Id. p. 28, n. 14.

This is consistent with various similar statements made by other courts. In *Betancourt v. Ingram Park Mall, LP*, 735 F.Supp.2d 587, 596-97 (W.D. Tex. 2010), one court cited Supreme and circuit court opinions in noting that Title III of the ADA is similar to other civil rights laws and that enforcement by an individual is private in form only, but such an individual vindicates an important public policy the Congress considered of the highest priority. In *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003), the First Circuit noted that Congress had this intention in mind when it drafted the ADA because "Congress evinced its understanding 'that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance.'" It is also consistent with the Eleventh Circuit's statement that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in

3

federal courts to enforce legal and civil rights." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013). It is also consistent with Congress' stated purpose to create a clear, strong, comprehensive and enforceable mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. Section 12101(b). Indeed, if not for plaintiffs such as this one, hotels and other places of public accommodation would be free to discriminate. Quite simply, there is no one else to enforce this law or make places of public accommodation compliant. Without such persons as Laufer, discrimination against disabled persons would continue to be widespread and unchecked.

Second, the *Dove Hess* Court stated it is not necessary that the Plaintiff intend to book a room at every single hotel she has sued. Rather, "it is not facially implausible that she intends to at least visit each of their websites in order to make an informed choice about whether to visit in person, which is the injury she alleges here." Order, pp. 33-34 [citing *Camacho v. Vanderbilt University,* 2019 U.S. Dist. Lexis 209202, at *30 (S.D.N.Y. 2019)].

Third, the *Dove Hess* Court, at p. 23, observed that *Juscinska v. Paper Factory Hotel, LLC*, 2019 WL 2343306, at *1, 2019 U.S. Dist. LEXIS 92550, at *2-3 (S.D.N.Y. June 3, 2019) only noted that the plaintiff had visited the ORS in order to book a room for a "staycation," but did not address whether or not this fact was essential to the plaintiff's standing. This substantially undermines the holding in *Hernandez v. Caesars License Co., LLC*, 2019 U.S. Dist. LEXIS 208551 (D.N.J. Dec. 4, 2019), which relied on *Juscinska* in reaching its conclusion that such intent was a requirement.

Fourth, the Dove Hess Court, at p. 24, also noted that *Harty v. West Point Realty, Inc.* 2020 U.S. Dist. LEXIS 141893 (S.D.N.Y. Aug. 7, 2020), did not directly address whether the

4

plaintiff's alleged injury was analogous to the type of statutorily-recognized injury addressed in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and its progeny. In this regard, *Harty*'s failure to address the applicability of *Havens Realty* was a critical error which, by itself, forms a basis for reversal in the pending appeal.

The Court also held that Plaintiff did not act in bad faith when she defended her original compliant for several months, which relied on tester standing, but then sought to amend her pleadings in light of the developing law. Order, pp. 13-14.

**2.** ***Dove Hess* Was Flawed For Many Reasons**

To summarize, the *Dove Hess* Court expressed its dislike for the law's application as necessitating limits, then proceeded to rationalize the addition of an intent requirement into the statute and Regulation. In doing so, it ignored the fact that other subsections of the statute contained nexus and intent requirements that were missing from the subsections that govern ORS discrimination, held that *Havens Realty* was inapplicable, ignored language in the cases it cited which favored standing in this case, and ultimately sided with the four decisions imposing the same requirement, despite the fact that those cases were fundamentally flawed.

**A. The Court Expressed Its Displeasure With The Law**

The *Dove Hess* Court expressed the reason why it sought to impose an intent requirement as the need to impose a limiting principle to prevent "any aggrieved person to challenge any deficient website belonging to anyone in the country." Order, p. 26. First, only hotels which maintain discriminatory online reservations systems may be legitimately sued. Any hotel which does NOT discriminate against disabled persons need not concern itself with potential lawsuits - or at least has a prevailing defense on the merits. Second, this is not a case of a local restaurant or

5

store that maintains a website, but only serves the local neighborhood. Rather, hotels utilize online reservations systems to reach out and market to residents from other states and inviting them to their hotel, including Florida. By their nature, they cater to travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6. In the instances of ORS discrimination, they reach out to everybody in those states EXCEPT FOR disabled persons.

For example, in *Camacho*, 2019 U.S. Dist. Lexis 209202, ** 12-23, one court in New York asserted in personam jurisdiction pursuant to New York's Long Arm Statute and Due Process over a Tennessee college based on its website contacts with New York State residents. This included such considerations as whether New York residents could pay their tuition on the website and whether the website targeted or was used to market to prospective students in the state. This is exactly what hotel reservations systems do - they target and market to residents from other states and transact business, accepting payment and reservations. Thus, like the *Camacho* defendant, such hotels could reasonably foresee that they would be harming disabled persons in other states with their discriminatory website activity.

In any event, regardless of the *Dove Hess* Court's opinion regarding the policy of the law, it was improper for the Court to judicially rewrite the Statute. A court's duty "is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Marod*, 733 F.3d at 1333-34, citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013). "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*. Nor are courts allowed to add or subtract words from a statute. *Marod*, 733 F.3d at 1333-34; 62 *Cases of Jam v. United States*, 340 U.S. 593, 598

(1951)("But our problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain -- neither to add nor to subtract, neither to delete nor to distort."); *Blount v. Rizzi*, 400 U.S. 410, 419 (1971)("it is for Congress, not this Court, to rewrite the statute.").

### B. The *Dove Hess* Court Improperly Ignored The Rules Of Statutory Construction

The *Dove Hess* Court avoided the requirement that it apply the plain and unambiguous words of the Statute and Regulation. In this regard, the Court did acknowledge that other subsections of the same statute imposed restrictions that were absent in the provisions that govern an ORS. See Order, pp 12-13 and n.9 (recognizing the clients or customers and physical nexus restrictions contained in other subsections). However, the Court then proceeded to ignore this fact. In doing so, the *Dove Hess* Court ignored the holdings of *Havens Realty*, *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), *Bates v. United States*, 522 U.S. 23 (1997), *Marod* and *INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987), which stressed the decisive importance of such instances and founded their holdings in large part on the fact that a restrictive term could NOT be imposed in the interpretation of a statutory subsection if language to that effect was found elsewhere in the same statute, but omitted from the subsection at issue.

In sum, despite its acknowledgment, the *Dove Hess* Court essentially imposed the client or customer, bona fide patron, motive and physical nexus requirements into the Regulation and subsections that govern ORS discrimination. This is fundamental error on a decisive point.

### C. The *Dove Hess* Court Improperly Declined To Follow *Havens Realty*

The *Dove Hess* Court improperly declined to follow *Havens Realty,* reasoning that it was fully distinguishable and otherwise narrowed by *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In this regard, the *Dove Hess* Court's opinion is based on a misunderstanding of *Havens Realty*, *Spokeo*, *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653-57 (4th Cir. 2019), *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833-36 (7th Cir. 2019), and *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 491-95 (6th Cir. 2019).

1. ***Spokeo* Did Not Limit *Havens Realty***

At pp. 15-16, the *Dove Hess* Court implied that *Havens Realty* was limited by *Spokeo* in a way that impacts the law's interpretation as applied to online reservations services. On this issue, the *Dove Hess* Court acknowledged that *Havens Realty* stood for the proposition that testers, with no intent to rent or purchase an apartment, had standing to sue for injury-in-fact based on the failure to be provided truthful information because the applicable statute established the "enforceable right to truthful information...." *Id.*, at 14. *The Dove Hess* Court then acknowledged that:

> Following *Havens,* the Supreme Court has held that a plaintiff's "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute" is, in itself, a sufficiently "concrete and particular[ized]" injury-in-fact to create Article III standing. *FEC v. Akins*, 524 U.S. 11, 21 (1998) (citing *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Following the Supreme Court's lead, the Second Circuit has also applied *Havens* to hold that, at least in some circumstances, "testers" who suffer a statutorily-recognized injury meet the "injury-in-fact" requirement for standing, regardless of their subjective motivations. See, e.g., *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (finding that plaintiffs had standing to challenge advertisements for apartments that indicated a racial preference, even "assum[ing] that the plaintiffs were not actively looking for an apartment" and were instead "combing the newspapers looking for these ads in order to bring a section 804(c) action," because "[t]here is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by [Plaintiffs]").

Order, p. 15.

Then the *Dove Hess* Court implied that the applicability of *Havens Realty* to the case at bar was negated by *Spokeo*, stating that: "More recently, however, the Supreme Court has made clear that *Havens* and its progeny should not be read to mean that *all* injuries recognized by statute are sufficiently "concrete and particularized" to meet the Article III injury-in-fact requirement." *Id*. at 15. (Emphasis supplied.) The *Dove Hess* Court did not thereafter explain how more recent Supreme Court opinions rendered *Havens Realty* inapplicable to ORS discrimination.

First, there is nothing in the *Spokeo* opinion which can be construed as a limitation on *Havens Realty*. To the contrary, *Spokeo* stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50. In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

9

*Akins*, 524 U.S. at 21. Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs. Indeed, the concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553 (Thomas J., Concurring). *Havens Realty* was also recognized in *Spokeo*'s dissent. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting). In *Macy v. GC Servs., L.P.*, 897 F.3d 747, 754 (6th Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

Nor did the *Dove Hess* Court's reliance on *Griffin*, *Carello* and *Brintley* support its conclusion. All three cases involved a vision impaired plaintiff's suit for failure of commercial websites to be compatible with screen reader software.¹ In all three cases, the defendants were closed member credit unions and the plaintiffs were legally barred from availing themselves of the defendants' services. Although the *Dove Hess* Court, at p. 21, acknowledged this "legally barred" point, it overlooked *Griffin*'s other disclaimer that it was not considering " the rights generally of people with disabilities to sue for Internet-based harms under the ADA..." 912 F.3d at 652, 653 (emphasis added). *Carello* confined its holdling as being no broader than *Griffin*. *Carello*, 930 F. 3d at 833. Significantly, the *Carello* Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello does not complain that the Credit **Union withheld information**...." *Id*. at 835 (emphasis added). Thus, the *Carello* Court expressly

---

¹With respect to the locus of injury, such cases are similar to ORS cases because the injury occurs when and where the disabled person views the discriminatory website. However, as will be discussed below, the legal and statutory nature of the injury-in-fact differ substantially.

10

distinguished the statute at issue therein with the type of statute and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello* Court recognized that informational injury is actionable when the defendant fails to provide information to a plaintiff that a law entitles him to obtain and review for some substantive purpose. *Id*. at 835. "Once that occurs, there is no additional requirement that the plaintiff suffer any additional harm beyond his or her failure to receive the information that the law renders subject to disclosure. *Id.*, citing *Spokeo*. Specifically, the *Carello* Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas [v. Madison Ave., Assoc.*, 926 F.3d 329,] 337-38 [(7th Cir. 2019)] ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

*Carello*, 930 F. 3d at 833. In *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*, 2020 U.S. Dist. LEXIS 206417 (N.D.Ill. 11/4/20) ("*Waterfront*"), one court held that *Carello* supports a finding that Laufer has standing for strictly informational injury even in the absence of any plans to travel to the area where the hotel is located. *Id*, at 12-13. The Court then held that the types of informational injury suffered by Laufer fell within the category recognized by the *Carello* Court as having a complete injury-in-fact with nothing additional required. *Id.* On this point, the *Waterfront* Court reasoned:

> What *Carello* reinforces is that absent such a legal barrier, informational and dignitary injuries do suffice to support Article III standing. And that is exactly what Laufer alleges here. She claims that the inadequate disclosures about Waterfront's accessibility "deprive her of the information required to make meaningful choices for travel," and that she "suffer[s] … frustration and humiliation as the result of the discriminatory conditions present" on the hotel's booking pages. [] Thus, even absent a concrete plan to visit Johnsburg, Laufer has standing to bring this ADA suit.
> ...
> Waterfront next submits that the complaint fails to state a claim, arguing that the ADA "requires the hotel to accommodate Ms. Laufer's disabilities [only] if she desires to stay there." [] As explained above, however, Laufer's alleged injury is not the inability to stay at Waterfront; rather, it is the inability to determine whether she *can* stay there, as well as the stigmatic injury resulting from Waterfront's failure to make accessibility information available.

*Id*. The *Dove Hess* Court failed to adequately address the relatively straightforward interplay between *Havens Realty*, *Akins, Spokeo*, *Griffin* and *Carello*.[2] Under those cases, if the defendant is legally obligated to provide information to the plaintiff or the class of which plaintiff is a member, either publically or privately, then failure to do so gives rise to informational injury even if the plaintiff encountered the information solely for the purpose of filing a lawsuit to challenge its illegality (i.e., combing the newspapers). In *Havens Realty*, for example, the statute required that the defendant was obligated to provide truthful information to black persons, of whom the plaintiffs were members of the class. By contrast, the statute at issue in *Spokeo* (the Fair Credit Reporting Act), required that the defendant provide accurate information to third party creditors. There was no legal obligation for the *Spokeo* defendant to provide any information to the *Spokeo* plaintiff. Nor were the *Griffin*, *Carello* or *Brintley* defendants under any legal obligation to provide information to the respective plaintiffs.

---

[2]The court also ignored the vast body of opinions from circuit courts around the country that recognize informational injury.

The *Dove Hess* Court ignored the fact that, in the case at bar, the Regulation and Statute create a legal requirement for the defendant to provide information to this plaintiff. Whereas the above cases hold that the plaintiff's encounter with a discriminatory ORS constitutes informational injury, with nothing additional required, the *Dove Hess* Court's imposition of the intent requirement is plainly erroneous.

### 2. The *Dove Hess* Court's Attempts To Distinguish *Havens Realty* Were Erroneous

The *Dove Hess* Court also attempted to distinguish *Havens Realty* in two ways.

### A. Havens Realty Was Not About Differential Treatment

At p. 25, the *Dove Hess* Court cited *Laufer v. Arpan* for the proposition that *Havens Realty* was about a plaintiff being directly lied to and discriminated against whereas the ADA Plaintiff faced no particularized harm since she had access to the same information as everyone else. *Arpan*, in turn, at p. 11 of its own opinion cited *Hernandez* for this proposition. Contrary to the interpretation of *Hernandez*, *Arpan* and now *Dove Hess*, *Havens Realty* stood for no such thing. The *Havens Realty* Court specifically stated as follows:

> Thus, even though the individual testers had no intention of renting or purchasing a home or apartment, "Congress has thus conferred on all "persons" a legal right ***to truthful information*** about available housing." *Id.* The Court noted that the statute "establishes an enforceable right to ***truthful information*** concerning the availability of housing....A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive ***false information***, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty*, 455 U.S. at 373-74 (emphasis added). In subsequent opinions, the Supreme Court expressly recognized that *Havens Realty* stands for the proposition that it is about the right

13

to receive truthful information and that failure in this regard constitutes injury. In the *Akins* decision, the Supreme Court referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" **when the plaintiff fails to obtain information** which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21 (emphasis added.)

This same point was made in *Havens Realty's* own dissenting opinion. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting)(noting that *Havens Realty* identified the right to truthful information). Various circuit courts have cited *Havens Realty* in reaching similar conclusions in recognizing informational injury. See *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Watts v. Boyd Properties*, 758 F.2d 1482, 1485 (11th Cir. 1985)(noting *Havens Realty's* holding that plaintiff had right against receiving false information); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Tandy v. City of Wichita*, 380 F3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure).

At least one court directly rejected the notion advanced by *Dove Hess*. See *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017)("*Havens Realty* turns only on the misleading nature of the representations, not on the racial motivation behind them").

Indeed, many of these cases referred not to specific misinformation directed to a particularized plaintiff, but **public** information. See, *Akins*, 524 U.S. at 21 (public information); *Carello*, 930 F. 3d at 833 (referring to sunshine laws as an example of information that must be disclosed).

Inexplicably, the *Dove Hess* Court failed to recognize that its holding is in conflict with the Second Circuit's decision in *Ragin*, which involved a discriminatory advertisement placed in a newspaper and, therefore, the entire public had access to the same information.

The *Dove Hess* Court, at pp. 25-26 also cited *Hernandez* for the proposition that neither *Havens* nor *Marod* stood for the proposition that the plaintiff's motions are irrelevant to the issue of injury. This is a reckless misreading of both case because both *Havens* and *Marod* plainly say otherwise. In *Havens*, the Court specifically stated: "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). 455 U.S. at 374. *Marod* contains a section entitled "Tester Motive Does Not Negate Injury-In-Fact". 733 F.3d at 1332. The court held that Subsections 12182(a) and

15

12182(b)(2)(A)(iv)[3] provided no basis for suggesting that the plaintiff's tester motive was relevant to his legal right. *Id*.

Lastly, at pp. 24-25, the *Dove Hess* Court misinterpreted *Havens Realty* as having some additional kind of concrete injury or contact with a physical property. It did not. Rather, the *Havens Realty* Court held that the plaintiffs had suffered injury for having received untruthful information even though they had no intention of renting an apartment. In other words, they had no intention of doing anything with that information. There was nothing in the *Havens Realty* Court's opinion that supported the *Dove Hess'* interpretation at pp. 24-25 that they had tried to access the actual premises or that the untruthful information impeded them in this regard. The basis of the *Havens Realty* Court's holding was the plain and unambiguous words of the statute.

**D.**     ***Dove Hess'* Holding That Dual Motivation Is Required Is Erroneous**

The *Dove Hess* Court opined, at p. 19, that there is no tester standing recognized in the Second Circuit, but that a plaintiff must have a dual motivation which includes actually booking a room, visiting the property or making use of its goods and services. Again, not only did *Dove Hess* Court employ this rationale as justification to improperly write its own term into the Statute, such is inconsistent with *Ragin*. In *Ragin*, the black testers clearly lacked any such "dual motivation". *Ragin* reached its holding that intent was irrelevant by comparing the operative language with the statute before it with the statute before the *Havens Realty* Court. The operative words "any person" were decisive. 6 F.3d at 904. This is precisely the same operative phrase

---

[3]In addition to the clients or customers requirement of 12182(b)(1)(A), two out of four subparts of Subsection 12182(b)(2)(A) have nexus requirements and the other two do not. The subsection referenced by the *Marod* Court and Subsection 12182(b)(2)(A)(ii), applicable to hotel online reservations systems, are the two subparts that do NOT.

relied on by the *Marod* Court in holding that testers have standing under the ADA's Title III (since Section 12188 gives rights to "any person"). *Marod*, 733 F.3d at 1331-33. See also *Tandy v. City of Wichita*, 380 F.3d 1277, 1286 (10th Cir. 2004)(performing the same analysis in holding that testers have standing under Title II). See also *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014)(following *Marod*); *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1101 (9th Cir. 2017)(holding that motive is irrelevant based on same analysis in comparing to the *Havens Realty* operative phrases). Both the *Marod* and *Hosp. Properties* Courts held that the ADA's enforcement provision exactly tracked the operative language used by *Havens Realty* in holding that motive is irrelevant. *Hosp. Properties*, 867 F.3d at 1102; *Marod*, 733 F.3d at 1332-33.

Thus, the *Dove Hess* Court's reference to dual motivation is outdated and erroneous.

### E. *Dove Hess* Misunderstood *Camacho*

At p. 22, the *Dove Hess* Court opined that the *Camacho* plaintiff's reason for reviewing the websites was relevant to the issue of injury. It was not. A plain reading of *Camacho* clearly indicates that the Court's references to the plaintiff's reason for viewing the websites (to shop for schools) were in the discussion addressing the defendant's challenge on the issue of plausibility of return, rather than the issue of injury-in-fact. As the *Camacho* opinion indicates, this discussion was prompted by the defendant's argument that the plaintiff lacked a credible intent to return. *Camacho*, 2019 U.S. Dist. LEXIS 209202 at *30. The *Camacho* court stated that such was relevant to "a reasonable inference that he intended to return to the Website...." In the subsequent paragraph, the Camacho court continued to analyze "particular interest" with the reasonable inference of returning to the site of discrimination. There is nothing in the *Camacho*'s

17

analysis to form any basis to conclude that the plaintiff's intent to possibly attend a college was an element of injury. Rather, everything in *Camacho's* opinion indicates that this discussion was solely on the issue of whether it was plausible that the plaintiff would return to the website. As the *Dove Hess* Court stated, Plaintiff's system of rechecking websites already satisfies this element.

F. **Screen Reader Software And ORS Discrimination Have Critical Differences**

The *Dove Court's* fixation on *Camacho*, *Griffin*, *Brintley* and *Carello* as requiring additional injury is misplaced for another reason. These cases all involve claims by vision impaired individuals claiming that the defendants' websites failed to have the coding required to make them compatible with screen reader software. On the issue of the nature of injury, there are two fundamental differences between these cases and ORS cases.

First, there is no promulgated regulation governing screen reader software compatibility and there is **no legal mandate** that any defendant in a screen reader software case provide **information** to disabled persons, or any plaintiff that sues them under the ADA. Thus, neither *Havens Realty*, nor any other cases recognizing informational injury apply. *Spokeo* doesn't even apply because no statutory obligation to provide any sort of information to anybody has been triggered. If *Spokeo* did apply, this would be the sort of claim for which something additional would be required to establish injury.

Moreover, as stated above, two subparts of 12182(b)(2)(A) contain physical nexus requirements and two do not. One such subpart is 12182(b)(2)(A)(iii),[4] which provides that

---

[4]As discussed in prior briefing, the first subpart which imposes a physical nexus requirement is 12182(b)(2)(A)(I) - which applies to eligibility criteria that screens out disabled persons from full and equal enjoyment of goods, services, etc.

18

discrimination includes: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals **because of** the absence of auxiliary aids and services..." (Emphasis added.) Courts addressing the issue directly consider the failure to contain the coding required for commercial websites to be compatible with screen reader software as a failure to provide "auxiliary aids or services". See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122 (2019). Thus, imposition of a physical nexus requirement in such instances is entirely appropriate, given that the governing subpart clearly and unambiguously sets this forth. ("...because of".)

Thus, vision impairment/screen reader software cases differ from ORS cases because they do not involve any sort of legal mandate that they provide any sort of information to anybody, let alone disabled persons, and because they involve an entirely different subsection (auxiliary aids), which plainly contains a physical nexus requirement that is absent from the subpart that governs ORS discrimination - 12182(b)(2)(A)(ii).

    **G.**    **The *Dove Hess* Court Improperly Followed *Arpan*, *Hernandez*, *Harty*, et al.**

District Court holdings that a plaintiff filing an ORS discrimination case must intend to book a room began with *Hernandez*, which based its holding on a misinterpretation of virtually every point of law on which it based its decision. The other courts simply followed in its wake, with the *Dove Hess* decision being the latest. It is nonsensical that after having noted at p. 23 that the *Juscinska* opinion did not stand for the proposition that intent to book is a requirement of ORS discrimination case, it followed Hernandez without noticing that this was one of two cases on which Hernandez founded its opinion. It should have been put on notice that the Hernandez

19

decision was equally wrong with regard to the other case on which it relied, as well as every other legal interpretation. Nor did the *Dove Hess* Court notice that the *West Point* and *Arpan* decisions were equally flawed and based on a complete misreading of applicable law. Therefore, its ultimate decision to follow them, at p. 27, was erroneous.

Respectfully submitted,

Attorney for Plaintiff:

By: /s/ Kimberly A. Corkill, Esq.

Kimberly A. Corkill, Of Counsel
Thomas B. Bacon, P.A.
7 N. Coyle Street
Pensacola, FL 32502
ph. 850-375-3475
fx 877-828-4446
kimberlyatlaw@gmail.com
Florida Bar Id. No. 84942

Thomas B. Bacon, Esq.
Thomas B. Bacon, P.A.
644 North Mc Donald St.
Mt. Dora, FL 32757
ph. (850)375-3475
kimberlyatlaw@gmail.com
Florida Bar. Id. No. 139262

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic filing system upon all parties of record this December 7, 2020.

By: /s/ Kimberly A. Corkill, Esq.